## Staunton.

BASHAW'S ADMINISTRATOR AND OTHERS v. WALLACE'S ADMINIS-
TRATOR AND OTHERS.

September 10, 1903.

Absent, Buchanan, J.*

1. ALTERATION OF WRITTEN INSTRUMENT—*Burden of Proof—Case in
   Judgment.*—If the apparent alterations on the face of a written in-
   strument are such as detract from its credit, it is incumbent on the
   party claiming under the paper to explain them, or else the paper
   will be excluded as evidence. In the case in judgment the alleged
   alteration consisted in changing the date of the bond from 1878 to
   1879, but the right of action thereon was not barred at the time of
   the institution of this suit, even if the true date was 1878. The
   original consideration for the bond arose in 1878, but when or by
   whom the alleged alteration was made, or what the true date was
   before such alteration, does not appear. The payee was a man of
   unimpeachable integrity and a very indulgent creditor, while the
   obligor was a man of very limited means. It was not shown that
   the bond had been paid. Considering all the circumstances of the
   case, and after inspecting the bond itself, it was held that the alte-
   ration was immaterial, as the right of action on the bond was not
   barred by the act of limitations, and that the bond should have been
   received in evidence.

Appeal from a decree of the Circuit Court of Augusta coun-
ty, pronounced December 28, 1901, in a suit in chancery where-
in the appellant, Bashaw's administrator, was the complainant,
and the appellees were the defendants.

*Reversed.*

The decision of this case was rested by the trial court in
large measure upon the appearance of the bond itself, and the

*Judge Buchanan was detained at home by sickness.

same is true of the decision in this court. The conclusions of this court upon that subject sufficiently appear in the opinion of the court. The commissioner to whom the case was referred by the trial court thus summarizes in his second report the evidence adduced before him:

"Much of that evidence is to the effect that Dr. Bashaw is a man of good character. It is also shown that he was very careless in matters of business.

"It is further shown that R. N. Wallace acknowledged that he was indebted to Dr. Bashaw on account of a security debt. Sensabaugh testifies that he heard Wallace say to W. W. Walton that he owed Bashaw a debt evidenced by a bond, and that bond, which is the bond now in dispute, was assigned as collateral to secure a debt due by Bashaw to Walton of $1,238.35. This was some time in 1893. It further appears that Bashaw paid for Wallace a judgment of $689.90, with interest from December 13, 1872. This judgment was paid by partial payments, ending apparently in 1878. It was based on a bond given by Bashaw and others to save from forced sale certain property of Wallace. It further appears that Wallace was a man in moderate circumstances, owning little outside of the land now sought to be subjected to the payment of the bond in issue.

"This is practically all that is shown by relevant evidence introduced since the filing of commissioner's first report. N. C. Watts, the administrator, was reintroduced. He states that Dr. Bashaw notified him that he was one of Wallace's creditors; but his evidence, which is but an elaboration of that given when first introduced, shows that he does not remember whether Bashaw called his attention specifically to the bond in question, or whether he confined himself to an attempt to collect the amount due him on an open account for professional services."

In the brief of counsel for appellees it is claimed that there are other material alterations besides the date. They say:

"Upon the introduction of the alleged bond, it appeared to

have been materially altered, the date in the upper right hand
corner having been torn or rubbed off and written in at another
place, the last two figures of the memorandum of the date of
maturity having been erased and rewritten, and the words "and
seals this day and date" as well as the scrolls and word "seal"
written therein, appearing to have been written with a different
ink and pen."

The bond in controversy was assigned by the payee, D. Ba-
shaw, on September 8, 1893, to W. W. Walton as collateral se-
curity for a debt, and, by subsequent assignments, came into
the hands of Martha M. Sensabaugh, who filed her petition in
the cause claiming the benefit of the recovery to the extent
necessary to pay a debt for which she held the bond in suit as
collateral.

*Hugh A. White* and *G. D. Letcher,* for the appellants.

*Braxton & Wayt,* for the appellees.

Keith, P., delivered the opinion of the court.

The bill in this case was filed in the Circuit Court of Augusta
county against the widow, the administrator, and the heirs at
law of R. N. Wallace, deceased, to collect the money alleged to
be due upon a bond which is in the words and figures following:

"$1,100.00.                          June 23rd, 1879, 18.

"One day after date we promise to pay to the order of D. Ba-
shaw or executor or heirs, &c., one thousand and one hundred
00-100 dollars at home without defalcation value received.   And
without relief from the Homestead Exemption law or any other.

"Statutory laws as to this obligation.

"As witness our hands and seals this day and date.

                    "SAM'L D. WALLACE (Seal),
                    "R. N. WALLACE (Seal).

."No. 10.
"Due June 24th, 1879."

The administrator, the widow, and the heirs at law of R. N. Wallace are made parties defendant.

The validity of this bond is put in issue by answers of the defendants, supported by the affidavit of one of them. We have no doubt that Samuel D. Wallace executed the bond to Bashaw for the sum mentioned in the paper above set out, and that R. N. Wallace signed it as his surety. The only question which we deem it necessary to consider is whether certain alterations which appear to have been made in it, so far detract from the credit of the paper as to impose upon the party holding it the duty of making satisfactory explanation with respect to such apparent alterations upon the pain of having the instrument rejected as evidence in his behalf.

When the bond in question was prepared, a printed form was used in which the figures "18" in the upper right-hand corner are left undefaced. The corner of the paper has been destroyed, apparently from the rubbing and abrasion incident to keeping a paper a long time folded in a pocket-book. The two right-hand figures of the date are so blurred as to be illegible. Their present appearance, or so much of them as remains, suggests the idea that they are written over the original date, but what that original date was it is impossible to say with any degree of confidence. To the left of these figures there are the figures "1879," wholly written, making the date now read "June 23rd, 1879." At the bottom of the note there now appears the word "due," in print, followed in manuscript by "June 24th, 1879," which makes the due date correspond with the date of the bond, which was payable one day after date. The two last figures, "7" and "9," of the due date also appear to have been changed. There is a faint appearance under these two figures of other numerals, but what they were is again a mere matter of conjecture. In other words, nothing more can be predicated from an inspection of the instrument than that in the two particulars mentioned there has been an alteration of

the 7 and 9, but when this alteration was made, by whom it was made, and what the figures were before the alteration was made, does not appear in this record; nor does the evidence do more than to stimulate the mind to conjecture, without affording a basis for a conclusion.

The law upon the subject of alterations in instruments is thus stated by Greenleaf, at section 564: "If, on the production of an instrument, it appears to have been altered, it is incumbent on the party offering it in evidence to explain this appearance.  Every alteration on the face of a written instrument detracts from its credit, and renders it suspicious; and this suspicion, the party claiming under it is ordinarily bound to remove."

And 2 Minor's Inst. 740, with respect to this subject, says: "No party to any writing is allowed to tamper with it by any alterations material, or made with bad intent, without subjecting himself to the just penalty of thereby avoiding the instrument altogether, so far as its future effect is concerned.  When any circumstances of suspicion occur, such as a different handwriting, different ink, etc., it must, in general, be explained, in order to make the writing available."  See, also, *Consumers' Ice Co.* v. *Jennings,* 100 Va. 719, 42 S. E. 879, and authorities there cited.

It appears that Bashaw paid as surety for S. D. Wallace a judgment of $689,90, with interest from December, 1872.  The payments upon this judgment were completed in June, 1878, and, considering it as a fact proved that the money thus paid by Bashaw as a surety for S. D. Wallace was the consideration for the bond in controversy, it appears that Bashaw came to the rescue of Wallace when he was in much need of assistance; that he became his surety; that he paid the debt; and that S. D. Wallace, with R. N. Wallace as his surety, executed the bond in controversy to reimburse Bashaw for the money thus allowed.  It appears further that Bashaw was a most indulgent

creditor; that Wallace was a man in moderate circumstances, owning little outside of the land which constituted his home, and which is now sought to be subjected in this suit.

The evidence proves, and it is conceded, that Dr. Bashaw was a man of high character and unimpeachable integrity. When this bond was offered in evidence, Dr. Bashaw was not a competent witness. Wallace being dead, Bashaw's lips were closed.

As we have seen, however, the consideration upon which this bond rests arose in June, 1878. If the bond was then executed—and it would be a violent presumption to suppose that it was executed at any earlier period—twenty years, which was at that time the limitation upon sealed instruments, would have expired in June, 1898; but, R. N. Wallace being then dead, the right of action was extended for one year (see section 2919 of the Code of 1887, as amended by Acts Assem. 1895-'96, p. 331, c. 292), so that the statute did not attach until the 23d of June, 1899. If, therefore, the original date of the bond was in June, 1878, the alteration was immaterial, for this action was instituted in April, 1899, about two months before the bar of the statute applied.

Considering all the evidence in the case, we have reached the conclusion that the Circuit Court erred in rejecting the bond. Its decree must, therefore, be reversed, and the cause remanded for further proceedings to be had in accordance with this opinion.

*Reversed.*